IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TIMMY EUGENE WORKMAN,

                Plaintiff,

v.                                                    CIVIL ACTION NO. 2:16-cv-12503

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

This is an action seeking review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff's application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By *Standing Order* (Document 4) entered on December 27, 2016, this matter was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for findings of fact and recommendations for disposition. On October 10, 2017, Judge Eifert submitted her *Proposed Findings and Recommendations* (PF&R) (Document 16), recommending that the Court grant the Plaintiff's motion for judgment on the pleadings to the extent that it requests remand, deny the Defendant's request to affirm the decision of the Commissioner, reverse the final decision of the Commissioner, remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, and dismiss this action from the Court's docket.

The Court[1] has reviewed the *Defendant's Objections to the Report and Recommendation* (Document 17) and the *Plaintiff's Response to Defendant's Objections to the Magistrate Judge's Proposed Finding and Recommendation* (Document 20). The Court has also reviewed the original briefing, the administrative record (Document 9 and attachments), and the PF&R. For the reasons stated herein, the Court finds that the objections should be overruled.

The Plaintiff, Timmy Workman, filed an application for Disability Insurance Benefits (DIB) and SSI on December 6, 2013. He ultimately alleged a disability onset date of December 8, 2013, and dropped his claim for DIB. The Plaintiff asserted that he was disabled due to "[l]imited education, mental limitations, can not [*sic*] read or write, slow learner, can not [*sic*] remember things learned if able to learn, leg problems, knee problems, limited mobility due to leg and knee problems, has had left leg broken 3 times, depression, [and] anxiety." (PF&R at 2, quoting Tr. at 220.) His SSI application was denied initially, upon reconsideration, and by the Honorable Toby J. Buel, Sr, Administrative Law Judge (ALJ), in a written decision following a hearing. The Appeals Counsel denied Mr. Workman's request for review, and he timely filed this civil action seeking judicial review.

Mr. Workman was born in 1963, and was 51 years old when the ALJ issued his decision. He left school after the eighth grade, and his work history includes jobs as a general laborer and a farm laborer. He has not worked since before his alleged disability onset date of December 8, 2013, and explained that he left his last job due to his knee problems. The PF&R contains a thorough overview of Mr. Workman's medical history, which is not the subject of the objections. Therefore, the Court incorporates those findings herein. In brief summary, Mr. Workman

---

[1] This matter was originally assigned to Chief Judge Thomas E. Johnston. It was reassigned to the undersigned on December 15, 2017, after briefing was complete.

received sporadic treatment and tests related to knee pain, as well as occasional shoulder, neck, and back pain. He lacked insurance, and did not receive regular treatment. The ALJ determined that Mr. Workman suffers from left knee deformity, status post left tibia fracture, and degenerative arthritis. The ALJ also found that Mr. Workman has borderline intellectual functioning. The Magistrate Judge's proposed ruling and the objections relate primarily to Mr. Workman's asserted mental/intellectual disability, and so the Court will also address that issue.

A state agency medical consultant, Dr. Joseph Richard, found that Mr. Workman had "mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation." (Tr. at 17.) Dr. Richard also opined that Mr. Workman "was not significantly limited in his ability to remember locations and work-like procedures or understand and remember very short and simple instructions; however, [he] was moderately limited in his ability to understand and remember detailed instructions." (PF&R at 16.) Dr. Richard also found moderate limitations in ability to carry out detailed instructions, attention, concentration, simple decision-making, pace, ability to complete a normal workday, need for frequent breaks, and interaction with the public. Ultimately, Dr. Richard "concluded that [Mr. Workman] had the residual functional capacity to complete work-like activity in a low stress work environment performing simple, routine tasks that did not carry any production requirement and included minimal contact with the public and accommodation for [his] physical limitations." (PF&R at 17.) The ALJ explained that Mr. Workman was able to perform personal care tasks and help his parents with chores, but spent most of his day watching television. The ALJ found that Mr.

Workman spent time with his family, but does not spend time with friends or participate in other social activities.

The ALJ accepted some findings from Larry Legg, M.A., who performed a consultative psychological evaluation. Mr. Legg reported deficiencies in Mr. Workman's concentration and pace. Mr. Legg also administered a Wechsler Adult Intelligence Scale test, which resulted in a full-scale IQ score of 63. Because Mr. Workman did not have a previous diagnosis of mental retardation, Mr. Legg diagnosed him with borderline intellectual functioning. Mr. Legg also administered a Neurobehavioral Cognitive Status Examination, which returned average results in orientation, attention, comprehension, repetitions, naming, memory, and judgment, but mild limitations in calculations and moderate limitations in similarities and constructions. Mr. Legg opined that those limitations "reflected long-standing learning disabilities." (PF&R at 15.)

Mr. Workman and his nephew, who helped him complete his disability application, stated "that he was illiterate, was a slow learner, had mental limitations, had a limited education, and quit school after the eighth grade." (PF&R at 17.) An earlier medical record contains a notation that Mr. Workman was illiterate, as well. They also indicated that Mr. Workman was in special education classes at school. His school records do not indicate whether he was in special education classes. Grades are recorded as "S" for "satisfactory" or "S-" for "less than satisfactory." In his final year, most of his grades were "S-" although previous years contained a mix of satisfactory and less than satisfactory grades. The school records also contain scores from educational examinations, although there is no key, rendering the results difficult to decipher. The composite score for an exam taken in the sixth grade reflects below-grade-level results. The

4

ALJ, relying on expert testimony from Dr. Marshall Tessnear, a psychological expert, concluded that the school record was indicative of an IQ of greater than 70.

## APPLICABLE LAW

Disability under the SSA is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five-step sequential inquiry to determine eligibility for social security disability benefits. If a claimant is determined not to be disabled at one step, the evaluation does not proceed to the next step. *See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005)). The Fourth Circuit has summarized the five-step process as follows:

> the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). "If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity, which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work." (citing 20 C.F.R. § 416.945(a)(1)). *Id.* at 635. If the claimant is able to perform his or her past work, the ALJ can find the claimant not to be disabled. *Id.* If the claimant is not able to perform his or her past work, the ALJ proceeds to step five, where "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform

other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Id.* (citing 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429).

## STANDARD OF REVIEW

The Federal Magistrates Act requires a district court to conduct a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Conversely, a district court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006). A district court's authority to choose among these options is independent of the statutory duty to afford review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no objections were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face."). As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Running parallel with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See*

6

*Mathews v. Weber*, 423 U.S. 261, 271 (1976); *see also Raddatz*, 447 U.S. at 683.

Section 405(g) of the SSA provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "When examining an SSA disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971). When the Commissioner's decision clearly disregards the overwhelming weight of the evidence, the Court may modify or reverse the decision. *Id.*

## DISCUSSION

The issue in this case centers on the third step of the sequential evaluation. The ALJ found that Mr. Workman's impairments did not meet or equal a listed impairment. Mr. Workman argues that his intellectual impairments meet or equal Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00. Magistrate Judge Eifert summarized the requirements to meet or equal Listing 12.05C as follows: "Claimant must demonstrate that he has an intellectual impairment that satisfies both the *diagnostic description* of intellectual disability and the *severity criteria* set forth in paragraph C." (PF&R at 21, emphasis in original.) The diagnostic description is "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during

7

the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." (*Id.*, quoting 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.05.) As relevant to this case, the Claimant must also show "a valid verbal, performance, or full scale IQ of 60 through 70" and "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.05C.

There is no dispute that Mr. Workman's left knee deformity and degenerative arthritis impose an additional and significant work-related limitation. The ALJ concluded, however, that Mr. Workman did not meet the intellectual function components of Listing 12.05C. The Magistrate Judge found that the ALJ's rejection of Mr. Workman's IQ score was not supported by substantial evidence. She also found that the ALJ did not adequately explain his conclusion that Mr. Workman did not have sufficient deficits in adaptive functioning to meet Listing 12.05C. The Magistrate Judge noted that the ALJ did not correct, and appeared to rely on, erroneous testimony or findings from the medical professionals. Specifically, she noted that Mr. Legg based his diagnosis of borderline intellectual function, rather than intellectual disability, on the fact that Mr. Workman did not have a prior diagnosis of mental retardation, and Dr. Tessnear misstated Listing 12.05C criteria as requiring an additional mental impairment, although the criteria may be satisfied (as would be the case here) with a physical impairment.

The Defendant objects, arguing that the ALJ's decision is supported by substantial evidence. The Defendant stresses that the consulting experts diagnosed Mr. Workman with borderline intellectual functioning, rather than intellectual disability, and "[t]he IQ score is not in and of itself germane to the instant inquiry as to whether Plaintiff meets the listing." (Obj. at 5.) The Defendant further argues that the PF&R erroneously states that the ALJ relied on Dr.

Tessnear's interpretation of the Plaintiff's school records in rejecting the IQ score, while the ALJ actually considered the psychologists' diagnoses and opinions, clinical findings, the Plaintiff's ability to perform tasks, his work history, and his social skills, as well as school records. The Defendant contends that Dr. Tessnear's opinion that the Plaintiff's school records are indicative of an IQ above 70 required no further explanation related to his interpretation of the school records because of his status as an expert.

The Defendant also argues that the Magistrate Judge improperly re-weighed the evidence by discussing facts in the record that would have supported a finding that Mr. Workman lacked sufficient adaptive functioning. The Defendant suggests that the ALJ may have found certain evidence, such as statements that the Plaintiff's sister worked with him and assisted him in his last job or that he was in special education classes in school, not to be credible. The Defendant further argues that the Magistrate Judge impermissibly interpreted the Plaintiff's school records by describing the records as "not particularly revealing." (Obj. at 16, quoting PF&R at 26.) In addition, the Defendant notes that "Plaintiff's school records show that he did well enough in school to graduate from elementary school." (*Id.* at 17.) Because the ALJ is entitled to weigh the evidence, make credibility determinations, and resolve conflicts in the record, the Defendant argues that the Court should affirm the Commissioner's decision.

The Plaintiff filed a brief response, arguing that the Magistrate Judge did not re-weigh the evidence, but recommended remand to permit the ALJ to weigh the evidence and "explicitly reconcile the apparent inconsistencies." (Pl. Resp. at 2, quoting PF&R at 35.) The Plaintiff urges the Court to adopt the PF&R, rather than "search for evidence and articulate reasons for the ALJ's decision that the ALJ himself did not articulate." (*Id.*)

9

The Court finds that remand is appropriate. The Fourth Circuit has held that an ALJ may reject an IQ score based on other evidence in the record. *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012). Here, however, the ALJ disregarded the IQ score without adequately setting forth reasons for doing so. He noted Dr. Tessnear's opinion that Mr. Workman's 6th grade standardized test results were reflective of an IQ above 70, without further explanation of those results.[2] The ALJ did not discuss Mr. Legg's opinion that the score validly reflected Mr. Workman's mental abilities. The ALJ also did not evaluate those school records in light of the regulations limiting consideration of IQ test results obtained prior to age 16, as discussed in more detail in the PF&R.[3] (PF&R at 26–27.)

To the extent the ALJ's discussion of Mr. Workman's adaptive functioning and ability to perform the activities of daily living contributed to his rejection of the IQ score, the Court finds that the ALJ did not adequately explain his reasoning to permit review. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (internal citation omitted). The PF&R contains a more complete discussion of the evidence contained in the administrative record and the relevant regulations and standards, which the Court adopts in full herein. Far from re-weighing the evidence, as suggested by the Defendant, the Magistrate Judge reviewed the record and noted significant evidence that

---

2 The Defendant argues that Dr. Tessnear's status as an expert eliminates any need for further explanation. Nothing in the record suggests that Dr. Tessnear's expertise extends to interpretation of decades-old school records.

3 The Defendant dismisses those regulations by noting that the standardized test was not an IQ score. However, Dr. Tessnear and the ALJ used those results to extrapolate an estimated IQ, and so the Court finds that some consideration of the applicable regulations was necessary.

the ALJ's decision overlooked. For example, the ALJ found that Mr. Workman had no difficulty performing personal care tasks (Tr. at 18), but did not discuss evidence that he had to be reminded to complete such tasks. The ALJ concluded that "the record does not include necessary evidence of deficits in adaptive functioning," based on his job history, assistance with household chores, and having once had a driver's license. He did not discuss contrary evidence, including the evidence that Mr. Workman completed job duties only with assistance from his sister and coworkers, that he obtained a driver's license only after several attempts on the oral examination and no longer maintains a license. The ALJ did not discuss evidence that Mr. Workman relies on family members to provide transportation, food, and housing, as well as assistance with financial tasks, reminders of personal care tasks, and assistance with pet care. Remand will permit the ALJ to weigh that evidence in the first instance and provide a decision with sufficient explanations regarding his evaluation of the evidence to facilitate meaningful review.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Objections to the Report and Recommendation* (Document 17) be **OVERRULED** and that the *Proposed Findings and Recommendations* (Document 16) be **ADOPTED**. The Court further **ORDERS** that the *Plaintiff's Memorandum in Support of Judgment on the Pleadings* (Document 14) be **GRANTED** to the extent it seeks remand, that the Defendant's *Brief in Support of Defendant's Decision* (Document 15) be **DENIED**, that the Commissioner's final decision be **REVERSED**, and that this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. The Court further **ORDERS** that this matter be removed from the Court's docket.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge Eifert, to counsel of record and to any unrepresented party.

ENTER: February 27, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA